## WILLIAM WARD V. CARP RIVER IRON CO.

*Trover for ore sold from a mine whereon execution rests—Trespass by·
relator—Waste.*

Comp. L. §§ 4657-8 allows fifteen months for redeeming from an execu-
tion sale of real estate, but permits the execution purchaser to sue
for waste committed meanwhile and to recover for property wrong-·
fully taken therefrom.  Execution was levied on a mine, but defendant
in possession continued mining during the period allowed for·
redemption, and within the first six months sold a quantity of the
ore amounting to less than 2000 tons.  The execution purchaser, on
receiving a deed absolute, brought trover for this ore against the·
one who had bought it, and alleged that the execution defendant
had taken out 40,000 tons to the injury of the freehold.  *Held* that.
this allegation was not sufficient to sustain the action, and that
plaintiff could not maintain it without at least alleging and showing
that the removal of the specific quantity sued for, constituted such
injury; *also,* that he must somehow connect the purchaser of the ore·
with the injury by showing that he had taken part in some act of
wrong, or that he was chargeable with notice of facts that would
have divested the execution defendant of his prima facie right to·
sell.

One cannot be made a trespasser by relation, especially if the act sup-
posed to make him so is that of a person who is neither his agent
nor under his control.

Where execution is levied on a mine the judgment debtor is entitled,
during the period allowed for redemption, to continue working it in
a reasonable and prudent manner as measured by the customary
working before the execution sale; and he can dispose of the pro-
duct.  But improper, excessive or wasteful mining can be restrain-
ed, and the person responsible for it be held liable in damages.

**Error** to Marquette.    (Grant, J.)    April 25.—June 6.

TROVER.   Plaintiff brings error.   Affirmed.

*F. O. Clark* for appellant.   An execution purchaser of
land that is not redeemed, or one who acquires his rights,
can maintain trover for any part of the freehold which has
been removed to the permanent injury of the freehold : 2
N. Y. Rev. Stat. (1836), 260, 296 ; *Thomas v. Crofut* 14 N.
Y. 474; *Rich v. Baker* 3 Den. 79 ; *Jackson v. Ramsay* 3
Cow. 79 ; *Heath v. Ross* 12 Johns. 140 ; *Jackson v. Dicken-
son* 15 Johns. 315 ; a dowress or tenant for life or for years
might at common law work an open mine and not commit
waste : 1 Washb. R. P. (4th ed.) 144 ; *Billings v. Taylor* 10
Pick. 460 ; *Coates v. Cheever* 1 Cow. 480 ; but if the mining
is wrongful the reversionary owner can maintain trover
against the person buying the ore : *Final v. Backus* 18
Mich. 218 ; *Winchester v. Craig* 33 Mich. 206; *Grant v.
Smith* 26 Mich. 201 ; *Betts v. Lee* 5 Johns. 348; *Heath v.
Ross* 12 Johns. 140 ; *Mooers v. Wait* 3 Wend. 104 ; *Mor-
gan v. Varick* 8 Wend. 591 ; *Harlan v. Harlan* 15 Penn.
St. 515 ; *Barrett v. Warren* 3 Hill 348 ; *Storm v. Living-
ston* 6 Johns. 44; and could certainly do so if the buyer
were a mere trespasser : *Marq., Hought. & Ont. R. R. v.
Atkinson* 44 Mich. 166 ; if goods are taken wrongfully the
wrongdoer acquires no title, and can convey none to a bona
fide purchaser : *Mowrey v. Walsh* 8 Cow. 238 ; *Andrew v.
Dieterich* 14 Wend. 31 ; *Fitch v. Newberry* 1 Doug. (Mich.)
13; *Hoffman v. Carowl* 22 Wend. 318 ; a bona fide purchaser
of goods, tortiously taken, is not liable to the owner in
trespass, but is liable in trover and so is any person who
comes to the possession of such goods by delivery and
without fault on his part : *Barrett v. Warren* 3 Hill 348 ;
*Storm v. Livingston* 6 Johns. 44 ; *Brown v. Sax* 7 Cow. 95 ;
*Silsbury v. McCoon* 3 Comst. 379 ; *Eggleston v. Mundy* 4
Mich. 295 ; trover will lie against a bona fide purchaser of
loads of earth unlawfully taken from the plaintiff's land :
*Riley v. Boston Water Co.* 11 Cush. 11 ; where one co-ten-
ant appropriates the rights of another co-tenant trover may be
brought : *Webb v. Mann* 3 Mich. 139 ; *Bray v. Bray* 30 Mich.

479 ; *Grove v. Wise* 39 Mich. 161 ; *Achey v. Hull* 7 Mich. 423 ; any disposition of the property by the defendant which puts it out of his power to deliver it on demand is a complete conversion ; such as the grinding of wheat into flour, thus putting it beyond the power of the wrongdoer to return the wheat : *Webb v. Mann* 3 Mich. 143, 144 ; a tenant in common can maintain a separate and distinct action for a wrong done : Freeman on Co-Tenancy and Partition § 348 ; *Achey v. Hull* 7 Mich. 423.

*Ball & Hanscom* and *Dan H. Ball* for appellee. Working an opened mine is not waste or a permanent injury to the freehold : *Clavering v. Clavering* 2 P. Wms. 388 ; *Findlay v. Smith* 6 Munf. 134 ; *Reed v. Reed* 16 N. J. Eq. 248 ; *Stoughton v. Leigh* 1 Taunt 402 ; *Freer v. Stotenbur* 36 Barb. 641 ; *Elias v. Snowdon Slate Quarries Co.* L. R. 4 App. Cas. 454 ; it is not waste to work the mine properly, though it be exhausted by such working : *Kier v. Peterson* 41 Penn. St. 361 ; *Irwin v. Covode* 24 Penn. St. 162 ; *Neel v. Neel* 19 Penn. St. 323 ; *Griffin v. Fellows* 81* Penn. St. 125 ; the owner of one undivided interest in real estate has the right to make a reasonable use of it—till the fields, and work the mines, and sell the product : *Baker v. Wheeler* 8 Wend. 505 ; 4 Wait's Actions 424 ; *Martyn v. Knowllys* 8 Term 145 ; *Shepherd v. Young* 2 La. Ann. 238 ; *Blewett v. Coleman* 40 Penn. St. 45 ; *Alford v. Bradeen* 1 Nev. 228 ; *Coleman's Appeal* 26 Penn. St. 252.

COOLEY, J. This case was before this Court on demurrer to the declaration, and the decision is reported in 47 Mich. 65. The action is trover for the value of certain iron ore. The facts in brief are that in the last three months of 1877 and the first three months of 1878 the Marquette & Pacific Rolling Mill Co. being then in possession of and operating a certain iron mine, took therefrom between one thousand and two thousand tons of iron ore and sold the same to the defendant. But on the first day of October, 1877, the mine had been sold on execution against the Rolling Mill Company and bid in by one Parks, who sold and assigned the

certificates of purchase to the plaintiff. By statute the execution debtor had a privilege of redemption for a year, and if none was made, its creditors might redeem within three months following. No redemption was made, and the plaintiff received a deed from the officer who made the sale. Assuming that this deed made him owner by relation from the day the sale was made, and that all ore removed from the mine after that day was his property, the plaintiff then instituted this suit. His declaration was demurred to, and the demurrer sustained. This Court held in substance that during the time allowed for redemption the judgment debtor is entitled to the use of the premises sold as before; that he may rent them to be used as before or continue the use himself, and that when they constitute a mine, it is not waste to continue the mining operations. Incidentally it was said that if the mining of the ore had been a wrongful act, the plaintiff might perhaps have followed it and maintained trover against the party purchasing it; but there were no allegations in the declaration making it wrongful, and it was not averred that the premises were injured by the removal, or that they were worth any the less in consequence.

After this decision upon the demurrer, which was in affirmance of the ruling of the circuit court, the record was remanded, and the plaintiff had leave to amend. The amended declaration avers that after sale was made on the execution "the said Marquette & Pacific Rolling Mill Company continued to mine ore from said mine and sell and dispose of the same up to the time of the execution of the sheriff's deed of said property to plaintiff," and "during the time aforesaid mined and removed from said mine large quantities of iron ore, to-wit forty thousand tons, of which one thousand eight hundred and thirty-four tons were in the months of October, November and December, 1877, and January, February and March, 1878, taken to the furnace of the defendant," and " by the said defendant wrongfully converted to its own use." "And the plaintiff further alleges that the said real estate was permanently injured by the

removal of said forty thousand tons of iron ore to the amount of the value of said ore when so taken out," and that "the said mine was not worked during said year of redemption by the said Marquette & Pacific Rolling Mill Company in the taking out of said forty thousand tons of ore in a workmanlike manner, nor in the manner that had previously been used," etc.

Issue was taken on the amended declaration and a trial had, at the conclusion of which the trial judge directed a verdict for the defendant. The plaintiff again brings the case here by writ of error.

A very slight examination of the amended declaration will disclose the fact that the case made by it is no better than that made by the original, and is subject to substantially the same criticisms. The plaintiff alleges that the operations of the judgment debtor in the removal from the mine of forty thousand tons of ore constituted an injury to the freehold. But these operations extended over a period of fifteen months, and it is not alleged that any of the ore mined during the last nine months ever came to the hands of the defendant. What the defendant received was the comparatively small quantity that was mined during the first six months; and it is quite consistent with all that is alleged that the removal of this small quantity was no injury whatever. If the mine was rendered less valuable by its removal it is remarkable that the plaintiff failed to allege it. We cannot assume that because the mining which was carried on so largely in the summer was detrimental, the light operations of the preceding winter were also an injury to the freehold. Indeed the facts appearing in the bill of exceptions are directly to the contrary; for they show that the winter mining was useful in keeping the mine in condition for profitable operation for the rest of the year, and if suspended considerable injury must have resulted. It is not unreasonable to assume that we have in this fact the explanation of the failure to allege that the mining of the ore which was sold to defendant was injurious.

But even with that allegation the case would have been

·defective unless the plaintiff went further and in some way connected defendant with the wrong. The judgment debtor was entitled to continue the working of the mine in a reasonable and prudent manner having regard to the customary working before the sale, and to dispose of the proceeds. If the mining was improper, excessive or wasteful, it might at any time have been restrained, and the parties responsible for it held liable for the damages. But so long as the judgment debtor remained rightfully in possession with the liberty of mining, he must have had a right to sell the ore produced; and no one could question the right so long as the production was kept within proper bounds. But to make the title of a purchaser depend upon the fact that the judgment debtor did or did not, when the operations for the whole fifteen months were considered, exceed the just limits of his liberty would be altogether unreasonable and unjust; for no one could know when it would be safe for him to buy, and the debtor might lose the benefit of his occupancy for that reason. This defendant, for example, must apparently have been justified in making purchase when it did, because no waste was then being committed; and the purchase is made wrongful, if at all, by what was done subsequently. But one cannot be made a trespasser by relation, especially when the act which is supposed to make him such is the act of a party who is not his agent or in any way under his control. To charge the purchaser with wrong in buying from one who is lawfully in possession with lawful right to mine and sell, there must be in the case some act of wrong in which the purchaser himself participates, or he must be chargeable with knowledge or notice of facts which would deprive his vendor of the right to sell which prima facie he possessed.

On the hearing upon this writ of error the argument made before was renewed, and it was again contended that the taking of ore from the mines after sale was made on the execution, was necessarily waste. Being satisfied with the former decision we do not review it now. To the authorities then referred to we add *Griffin v. Fellows* 81½ Penn. St.

125; *Elias v. Snowdon Slate Quarries Co.* L. R. 4 App. Cas. 454.

The judgment must be affirmed with costs.

GRAVES, C. J. and CAMPBELL, J. concurred.